## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| IN RE: WESTERN MAINE ACCOUNTING SERVICES, LLC | ) ) ) | No. 2:22-mc-00081-KFW |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| | | |
|---|---|---|
| ELGASIM MOHAMED FADLALLA et al., | ) ) ) | |
| Plaintiff-Relators | ) ) | |
| v. | ) ) | No. 8:15-cv-01806-PX (D. Md.) |
| DYNCORP INTERNATIONAL LLC et al., | ) ) ) | |
| Defendants | ) | |

### RECOMMENDED DECISION ON MOTION TO COMPEL
### PRODUCTION OF DOCUMENTS IN RESPONSE TO SUBPOENA[1]

The Movants in this *qui tam* action pending in the United States District Court for the District of Maryland seek to compel a Maine entity, Western Maine Accounting Services, LLC ("Western Maine"), to produce documents in response to a subpoena served on July 26, 2021. *See* Motion to Compel ("Motion") (ECF No. 1); Exhs. A-B (ECF Nos. 1-1, 1-2) thereto. Western Maine withheld three of six categories of requested documents on the bases that (1) the underlying requests

---

[1] A decision on a motion to quash or enforce a subpoena is dispositive when, as here, the decision is dispositive of the entire matter before the court. *See In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 68 n.2 (1st Cir. 2011); *NLRB v. Frazier*, 966 F.2d 812, 816-19 (3d Cir. 1992).

1

exceed the bounds of discovery appropriate or relevant in False Claims Act (FCA) cases, and, in any event, (2) the Movants' failure to seek those documents first from a party imposes an undue burden on Western Maine as a nonparty. *See* Western Maine's Objection to Motion to Compel ("Objection") (ECF No. 2) at 3-10. Although, to the Movants' knowledge, they have received all documents responsive to the three uncontested categories of requests, to ensure a "complete production," they request an order compelling the production of documents responsive to all six categories except for any employee files from the so-called "SOCOM" contract, which they do not seek. Motion at 11 n.6; Reply in Support of Motion to Compel ("Reply") (ECF No. 4) at 7. Western Maine seeks sanctions against the Movants in the form of an award of its reasonable attorney fees and expenses incurred in responding to the subpoena. *See* Objection at 10.

For the reasons that follow, I recommend that the Court grant the Motion in part with respect to the three contested categories of document requests and otherwise deny it, ordering that Western Maine produce documents responsive to those three categories (except for any employee files from the SOCOM contract) by a date to be set by the Court. I further recommend that the Court deny Western Maine's request for sanctions against the Movants.

## I. Legal Standard

Federal Rule of Civil Procedure 45 provides, in relevant part, "On timely motion, the court for the district where compliance is required"—in this case, the District of Maine—"must quash or modify a subpoena that . . . subjects a person to

undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).[2] The person claiming undue burden bears the burden of proving that proposition. *See, e.g.*, *Fuller v. Unum Grp.*, No. 2:13-MC-140-DBH, 2013 WL 5967019, at *2 (D. Me. Nov. 8, 2013); 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* ("Wright & Miller") § 2463.1, at 507 (3d ed. 2008).

"Whether a subpoena subjects a witness to undue burden . . . usually raises a question of the reasonableness of the subpoena," requiring "a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." 9A Wright & Miller § 2463.1, at 501 (footnote omitted). "[T]his process of weighing a subpoena's benefits and burdens calls upon the trial court to consider whether the information is necessary and whether it is available from any other source," which is "obviously . . . a highly case specific inquiry and entails an exercise of judicial discretion." *Id.* at 501-06.

"In addition, subpoenas duces tecum to a third party are discovery devices which, although governed in the first instance by Rule 45, are also subject to the parameters established by Rule 26." *Hume v. Consol. Grain & Barge, Inc.*, No. 15-935, 2016 WL 7385699, at *2 (E.D. La. Dec. 21, 2016) (cleaned up). *See also, e.g.*, *EEOC v. Tex. Roadhouse, Inc.*, 303 F.R.D. 1, 2 (D. Mass. 2014) ("A subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement.").

In turn, Rule 26 provides, in relevant part:

---

[2] The "[p]lace of [c]ompliance" is defined, in relevant part, as "a place within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]" Fed. R. Civ. P. 45(c)(2)(A).

3

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). As in the case of Rule 45(d)(3)(A)(iv), analysis pursuant to Rule 26(b)(1) requires the court to engage "in a balancing test, weighing the defendants' need for this information, the availability of other means of obtaining it, and the burden placed on the claimants by the subpoenas." *Tex. Roadhouse*, 303 F.R.D. at 2.

## II. Factual Background

The Movants are 29 U.S. citizens who worked for defendant Global Linguist Solutions, LLC (GLS) as security-cleared linguists, translators, and interpreters for U.S. military and intelligence-gathering operations in the Middle East in connection with one or both of two contracts awarded to GLS by the Commander, Headquarters, United States Army Intelligence and Security Command ("INSCOM") in 2007 ("Contract 1") and 2011 ("Contract 2"), respectively. *U.S. ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 172-74 (D. Md. 2019); Second Amended Complaint (SAC), *Fadlalla*, ECF No. 2-1, ¶¶ 2, 5. The Movants allege, in relevant part, that:

1. Defendants DynCorp International, LLC ("DynCorp") and McNeil Technologies, Inc. (MTI) established GLS to serve their interests and controlled GLS's day-to-day operations. SAC ¶¶ 17-19, 29, 40.

2. GLS colluded with five named "Small Business Defendants," among them Shee Atika Languages, LLC (SAL), to secure Contract 1 by falsely representing

4

that those businesses were bona fide small businesses and small disadvantaged businesses. *Id.* ¶¶ 1, 7-8. During the competition for Contract 1, GLS entered into "Teaming Agreements" with those entities so that they might be counted as small business participants pursuant to the small business participation requirement of the contract. *Id.* ¶ 115.

3. GLS offered SAL to INSCOM as an Alaska Native-owned small business that would participate in the performance of Contract 1 as a bona fide independent subcontractor of GLS, consistent with Contract 1's small business set-aside requirements. *Id.* ¶ 82.

4. GLS's representations concerning the Small Business Defendants were false when made. *Id.* ¶ 117. GLS did not intend to abide by the terms of the solicitation and Contract 1 to promote the Small Business Defendants' performance capabilities or help them obtain the business experience necessary to ensure vigorous competition but, rather, intended to usurp their independence. *Id.*

5. The Teaming Agreements, as reflected by their terms and the Defendants' subsequent course of conduct, so vitiated the capabilities of the Small Business Defendants that those entities were converted into GLS affiliates. *Id.* ¶ 118.

6. Linguists were hired, trained, and supervised solely by GLS, which also dictated their pay and benefits, and were merely shuffled between GLS and various subcontractors to make it appear as if they were employed by the Small Business Defendants. *Id.* ¶¶ 121, 128-43, 210.

7.      But for its false statements concerning the status of the Small Business Defendants, GLS would not have secured Contract 1, and but for its false representation that it had complied with the terms of Contract 1, including the expected level of participation of the Small Business Defendants, GLS would not have secured Contract 2.  *Id*. ¶¶ 124, 148-50.

### III.  Discussion

The Movants requested six categories of documents from Western Maine: (1)  all communications with employees, agents, or representatives of SAL, (2) any agreements between SAL and Western Maine, (3) accounting records of SAL in Western Maine's possession, (4) documents reflecting the allocation of money or payments from SAL to WorldWide and/or Larry Costa, (5) documents relating to or referencing bidding on Contract 1 (the INSCOM linguist contract), and (6) documents relating to the performance of Contract 1.  Exh. B (ECF No. 1-2).

Western Maine represents that it has made a complete production of documents in response to Nos. 2, 5, and 6.  *See* Objection at 3.  However, it objects to Nos. 1, 3, and 4 (seeking all communications between Western Maine and SAL, accounting records of SAL, and documents reflecting payments from SAL to WorldWide or Costa) on the basis that they are "in no way limited to the INSCOM contract or Movants' allegations" and constitute an improper "fishing expedition" to attempt to formulate new claims against existing parties or new causes of actions against persons not yet parties to the underlying litigation.  *Id*. at 3-5; Exh. H (ECF No. 1-8) at Page ID # 56.  Western Maine further argues that the requests are

burdensome and disproportional to the needs of the case because, although the Movants sought documents from SAL, which has already produced more than 63,000 documents numbering more than 300,000 pages, they apparently did not seek the disputed documents from SAL. Objection at 4, 10.

The Movants represent that they clarified to Western Maine that they do not seek employee files from the SOCOM contract, which they understand comprise most of the hard-copy documents in Western Maine's possession that could contain sensitive information. Reply in Support of Motion ("Reply") (ECF No. 4) at 7; Declaration of Timothy N. Mathews ("Mathews Decl.") (ECF No. 4-1) ¶ 4. However, apart from those employee files, they press for a complete production in response to all six categories of requested documents. *See* Motion at 11 n.6; Reply at 7.

I accept the representation of Western Maine's counsel, as an officer of the Court, that Western Maine has made a complete production in response to document request Nos. 2, 5, and 6. *See* Objection at 3. However, for the reasons that follow, I grant the Movants' request to compel the production of documents in response to the remaining three categories of requested documents, Nos. 1, 3, and 4, with the exception of employee files from the SOCOM contract.

### A. Relevance of Disputed Documents

In disputing the relevance of three categories of requested documents, Western Maine underscores that (1) it has already produced all documents *relevant to the INSCOM contract*, and (2) the Movants' expansive operative complaint neither mentions WorldWide or Costa nor alleges any basis on which SAL lost its small

7

business status other than that the Small Business Defendants were so dominated by GLS in the performance of the INSCOM contract that they became affiliates of GLS. *See* Objection at 6. Western Maine cites *United States ex rel. Duxbury v. Ortho Biotech Products, L.P.*, 719 F.3d 31 ("*Duxbury II*") (1st Cir. 2013), for the proposition that *qui tam* relators are "entitled to proceed with discovery for only those claims supported by [their] well-pled allegations." *Id.* at 4-5 (cleaned up).

The Movants, on the other hand, cite *Longacre v. AB Home Health Care, LLC*, No. 2:16-cv-00279-NT, 2018 WL 6037517 (D. Me. Nov. 15, 2018), for the proposition that this Court rejected the argument "that, in an FCA case, in order to be relevant and discoverable there must be a 'particularized allegation' in the complaint regarding the discovery sought." Motion at 8. Western Maine disagrees, arguing that in *Longacre,* this Court "merely expanded the relevant timeframe beyond plaintiff's employment, relying on the fact that information sought could bear on defendant's knowledge of misrepresentations at the core of plaintiff's complaint." Objection at 6-7. Western Maine contends that in this case, by contrast, the discovery requests at issue have no relation to the Movants' underlying allegations. *Id.* at 7.[3]

While it is true that, in *Duxbury II*, the First Circuit *upheld* an approach to discovery in an FCA action in which "the relator was entitled to proceed with

---

[3] Both sides cite caselaw from other jurisdictions bearing on the relevance prong. *See* Motion at 7-10; Objection at 5-7; *see also* Reply at 3-4. In addition, while I was finalizing this recommended decision, Western Maine provided a copy of a July 5, 2022, order of the United States District Court for the Eastern District of North Carolina denying, on both irrelevance and burdensomeness grounds, the Movants' motion to compel the production of similar documents pursuant to a subpoena served on WorldWide. *See* Notice of Decision on Related Motion to Compel (ECF No. 10); Order, *In re: WorldWide Language Res., LLC*, No. 5:22-MC-00005-RN (E.D.N.C. July 5, 2022) ("*WorldWide* Order), Exh. A (ECF No. 10-1) thereto. Both the cited caselaw from other jurisdictions and the WorldWide Order are nonbinding, and I rely on the controlling caselaw of the First Circuit as interpreted by this Court.

8

discovery for only those claims supported by his well-pled allegations," *Duxbury II*, 719 F.3d at 38, this Court has rejected the argument that the First Circuit *adopted* that approach:

> *Duxbury II* does not support a wholesale limitation on discovery beyond the particularized allegations of a relator's complaint. The First Circuit's "endorsement" of this limitation was hardly full-throated. Instead, it merely ruled that the district court's tailoring of the scope of discovery to the particularized allegations was "reasonable[,]" that the "district court was not required to expand the scope of discovery based upon the amended complaint's bald assertions that the purported kickback scheme continued after Duxbury's termination or that it was 'nationwide' in scope[,]" and that the "result was entirely consistent with the district court's considerable latitude in assessing the proper scope of discovery and did not amount to an abuse of discretion."

*Longacre*, 2018 WL 6037517, at *3 (quoting *Duxbury II*, 719 F.3d at 38-39 (citations omitted)). This Court further observed that "caselaw from other jurisdictions is not monolithic, with courts declining to limit discovery in *qui tam* actions to the particularized allegations of the complaint pursuant to Rule 9(b)[.]" *Id*. at *4.

Moreover, as the Movants point out, *see* Reply at 2-3, the plaintiff in *Duxbury II* stipulated at the close of the initial discovery period that "she had not uncovered a single piece of admissible evidence to support" her contention that the defendant had orchestrated a multi-year nationwide scheme of kickbacks, as a result of which "this was not a case in which evidence was discovered of a nationwide scheme, which might then have been the basis for widening discovery," *Duxbury II*, 719 F.3d at 39. Here, as the Movants note, *see* Reply at 3, they seek documents predicated upon discovery conducted to date suggesting the involvement of Western Maine, WorldWide, and Costa in the scheme alleged in their complaint.

The Movants are correct that, in *Longacre*, this Court did not require that a complaint contain particularized allegations *regarding the discovery sought* to warrant discovery in an FCA suit. Instead, this Court considered whether, rather than "fall[ing] into the realm of opportunistic behavior," the Plaintiff-Relator's discovery requests were "tailored to discover *material information related to her allegations*, which have survived a motion to dismiss." *Longacre*, 2018 WL 6037517, at *5 (cleaned up). The Movants' contested document requests clear that hurdle.

Accepting, for purposes of the resolution of this motion, that (1) Costa owns WorldWide and formed and owns 49 percent of SAL, (2) SAL was formed as part of a scheme to obtain lucrative government contracts and was at no time a bona fide small business entity, (3) Costa was intimately involved in GLS's bid for Contract 1, including proposing the substitution of SAL for WorldWide as a subcontractor, (4) Western Maine performed accounting, payroll, and other functions for SAL during the relevant period, and (5) Western Maine's owner served as outside Chief Financial Officer for both SAL and its sister company WorldWide, the document requests at issue (seeking all communications between Western Maine and SAL, SAL's accounting records, and documents reflecting payments from SAL to WorldWide or Costa) fairly can be described as seeking information material to the allegations of the complaint.

As the Movants note, on their version of events, Western Maine "was not a mere bystander" but, rather, "an active participant in the performance of the contract that is the subject of [their] existing claims." Reply at 4. The requested materials

are reasonably likely to shed light on the key question of whether, as the Movants allege, GLS conspired with the Small Business Defendants, including SAL (which was formed and 49 percent owned by Costa), to falsely present those entities as bona fide small or disadvantaged business partners to win a lucrative INSCOM contract when GLS itself intended to—and did—perform the work.

### B. Burden Imposed by Request for Disputed Documents

Western Maine argues that the allowance of the document requests at issue would impose an undue burden because the Movants have not exhausted efforts to obtain those materials—potentially thousands of documents containing confidential information—from SAL, a party to this litigation. *See* Objection at 8-10.

The Movants rejoin that (1) Western Maine has admitted that it has "only a few boxes of hard copy documents and certain emails that escaped routine deletion more than five years ago," Reply at 4 (cleaned up); Exh. H (ECF No. 1-8) at Page ID # 57; Mathews Decl. ¶ 4, (2) they have received more than 300,000 pages of documents directly from SAL, *see* Reply at 5, (3) SAL dissolved in or around 2012, as a result of which documents in its possession may have gone missing, *see id.*, and, (4) indeed, certain documents produced by Western Maine—SAL's accountant—had not previously been produced by SAL, *see id.* at 5-6. With respect to confidential SOCOM documents, they reiterate that they do not seek employee files from the SOCOM contract, which they understand comprise most of the hard-copy documents in Western Maine's possession that could contain sensitive information. *See id.* at 6-7; Mathews Decl. ¶ 4.

The Movants have the better argument. The universe of Western Maine materials responsive to the contested document requests is small; those documents are not necessarily duplicative of documents received directly from SAL, which dissolved in or around 2012; and the Movants have disclaimed any interest in employee files from the SOCOM contract. No useful purpose is served in directing the Movants to review the 300,000 pages received from SAL to ascertain if those might be duplicative of documents requested from Western Maine.[4]

## IV. Conclusion

For the foregoing reasons, I recommend that the Court **GRANT** the Motion in part, insofar as the Movants seek to compel the production of documents responsive to document request Nos. 1, 3, and 4 (all communications between Western Maine and SAL, accounting records of SAL, and documents reflecting payments from SAL to WorldWide or Costa) except for employee files from the SOCOM contract, and otherwise **DENY** it; **DENY** Western Maine's request for sanctions against the Movants; and **DIRECT** Western Maine to produce documents responsive to request Nos. 1, 3, and 4 except for employee files from the SOCOM contract by a date to be set by the Court.

---

[4] I am mindful that the United States District Court for the Eastern District of North Carolina denied the Movants' motion to compel documents from WorldWide in part on the basis of undue burden. *See* WorldWide Order at 6-7. However, WorldWide provided a declaration from its IT Director explaining that compliance with the subpoena would require thousands if not tens of thousands of hours of work and that WorldWide would incur additional cost and burden clearing sensitive documents with the United States Special Operations Command. *See id.* at 6. In this case, while Western Maine argued that the Movants sought to compel "production of potentially thousands of documents containing confidential information," Objection at 8, it submitted no evidence in support of that point.

12

## *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated July 7, 2022.

/s/ Karen Frink Wolf
United States Magistrate Judge